WALTER M. ELSWICK, Judge.
On July 27, 1942, Alfred D. Roberts, III, who was approximately 15 years of age, received the personal injuries hereinafter enumerated while riding on a bicycle on Virginia street west, in the city of Charleston, West Virginia, when his bicycle collided with a state road commission truck. It appears from the evidence that he was returning home from work and had. proceeded west on Virginia street until he came to a children’s *352 playground east of Park avenue where he drove up on to the sidewalk for the purpose, as he testified, of seeing who was playing. When he did not find anything of interest to him going on at the playground site, he again started on his journey home in a westwardly direction. Near the southwest corner of the playground is a 13 foot driveway entering the north side of Virginia street, and 29 feet west of said driveway is a 41 foot driveway. A pickup truck was parked facing east along the north side of Virginia street in between the two driveways with its rear near to the 41 foot driveway. A Packard car was parked, facing west, along the north side of Virginia street about 20 feet west of the pickup truck with its rear end extending with a slight angle out into Virginia street. Another car, owned by Ralph Waybright, was parked facing east on the south side of Virginia street about opposite the Packard car.
The claimant, Alfred D. Roberts, III., testified that when he left the view of the said playground he proceeded on his bicycle on the sidewalk until he came to the said 13 foot driveway and looked back of him to see if any cars were coming the way he was going, and then looked back in front to make sure that there wasn’t anything in front of him. (Record p. 32). He did see a truck coming east on his left of Virginia street (record p. 29). He then turned off the sidewalk on the 13 foot driveway, as he stated, and proceeded down Virginia street until he was by the side of the pickup truck, when his memory fails to recall anything that happened afterward at the scene of the collision. It appears from the evidence, that he had proceeded on down Virginia street to a point opposite the rear end of the Packard car when his bicycle collided with the state road truck at a point on its side near the rear end of its body. The boy was knocked about 15 to 20 feet and fell with his legs extending under the rear bumper of the parked pickup truck. His bicycle landed on the sidewalk east of the Packard car. At the time of the collision, Alfred D. Roberts, III., was a boy lacking approximately 12 days of being 15 years, of age, he having been born August 8, 1927.
*353 The witness, Ralph Waybright, testified that he started to get into his car which was parked across the street from the Packard car; that as he started to open the door to his car he saw two trucks coming east up Virginia street, one passing the other, thus making four cars “side by side” on the street, that is to say, the Packard car on the opposite side of the street from him, the two trucks, one passing the other, and his car. The truck on his side was a state road truck on which was loaded an air compressor, and was coming, within about 12 inches, close to him; so close that he practically jumped on his running board. As he turned he saw the boy on the sidewalk on the bicycle, but had to look out for his own safety. This truck nearest to him was “driving pretty fast” (record p. 55), and the other truck “had picked up pretty good speed to get past” the one nearest to him. He didn’t see the boy hit, for he had his head turned, but heard the truck hit him and could see him where the boy fell. The truck which hit the boy was on the boy’s right side of the street farthest from Waybright, the one which was in the act of passing the other state truck. Virginia street has an approximate width of 39 feet at the point where the collision took place. The bicycle had made a mark on the street about 12 inches out in the street from the rear end or side of the parked Packard car. Another witness, E. H. Irwin, was standing in the middle of the street about 150 feet west, watching a driver back a truck into a driveway and heard a tin can fall off of a truck and turned around and saw this state truck passing another truck, which truck passing the other “was making pretty good speed . . . wasn’t losing any tiire” (record p. 71). There was a distance of about 6 feet in between the two moving trucks. The two trucks had already passed Park avenue and when the falling of the tin can attracted his attention, the two trucks were then side by side to the other. The eastern intersection of Park avenue is about .76 feet from the point of collision. The state contends that the boy drove off of the sidewalk on the 41 foot driveway behind the Packard car. One of the witnesses, Mr. E. L. Hart, was sitting in his office facing Virginia street directly in front of the space on this driveway left vacant between the parked pickup truck and the Packard car. *354 The first thing that he heard was the impact of the bicycle and truck. He could see the boy where he landed after being struck, through his doorway. The boy would have had to pass his doorway on the sidewalk if he had turned in the street at this point, and if such had been the case, it is highly probable that the witness, Hart, would have seen or heard the boy pass his door.
Mr. Moles, the driver of the truck which hit the boy, testified that he did not see him until he came around the back end of the Packard car, when he, Moles, turned to the right and the boy struck the truck bed. Moles said he was- looking at the truck he was passing to keep from hitting it. An occupant in the driver’s seat of the Moles truck did see the boy come off the sidewalk and couldn’t say positively whether he came off the 13 foot sidewalk or the 41 foot sidewalk, but that he thought the boy came off of the 13 foot sidewalk (record p. 150). Moles could not remember sounding his horn when passing the truck and none of the witnesses heard a horn. Moles had followed the other truck all the'way from their work on the Sissonville road, following the Sissónville road to Washington street, then up Washington street and turned out to Virginia street. From the evidence, it appears that this road had been a narrow one until they got to Virginia street. The employees were always in a hurry to get home (record p. 126). They had quit work about'5 minutes' early on that dáy. (record p. 121). The driver and the accupant of his truck testified that he;was traveling about 25 miles per hour.
From' the evidence, it appears that Alfred D. Roberts, III., received the following injuries from the collision, namely:
He received a very severe flesh wound over biceps area of the left upper arm and a rather more severe ’ wound ¿cross the left clavicle area, (that is to say the left collar hone) extending vertically, with the collar bone sevéred and' either pulled apart of a piece of the bone missing. He"also récéivá'á a laceration on'his‘forehead, over his' left eye," which" leaves a scar which according to medical testimony will remain for *355 the rest of his life. When taken to the hospital the boy was also suffering from shock. He was in a semi-conscious condition, quite pale with pulse rapid, and suffering from what is technically termed traumatic shock, from severe traumatic injuries (record p. 104). He was admitted to the Staats hospital on July 27, 1942 and discharged on August 7, 1942. Since then, he has regularly visited Dr. Anderson for observation and treatment. The x-rays showed a fracture of the left clavicle or left collar bone, and that there was apparently some part of that clavicle missing, that is to say, there was a compound fracture of the left clavicle. There was also an extensive wound of the left arm.
From an x-ray examination made on October 20, 1942, it showed that there is an excessive scar tissue over the fractured clavicle, which is called keloid type, that is. a heavy, dense, red scar, a scar which is an overgrowth of skin. This scar is about 3V2 inches long and went from front to back, right over the middle of the left collar bone. There is another scare on the left upper arm which is “L” shaped, one branch of the “L” is about one-half inch long and the other running straight down the arm is two inches long. That is also a deep, dense, red. overgrown scar. Examination of the shoulder at the time showed some limitation of what is called abduction, that is, bringing the arm up from the side, and also some limitation of what is called internal rotation, that is, he cannot bring the arm up the back as far as he can the other one. And there was, at. said last examination, definite tenderness and pain in the place of the fracture, in the line of the fracture, in the point of the fracture when pressure was placed on the collar bone. At that time the bone had not entirely grown across the line of the fracture, in other words, the bone union is not entirely firm, either by x-ray or by examination, as indicated by the pain when the physician pressed on the outer end of the collar bone. While he is still under the care of his physician, reliance is made upon nature to perfect a firm union. It is problematical as to whether the growth of .the callus formation will take care of the situation. If it does not proceed sufficiently to give a strong union at the point of fracture, then the *356 procedure will be to operate on the arm ánd put in a bone graft across the line of fracture. Such an operation would have about a seventy-five per cent chance of being successful. If the bone grows firmly together, his physician is of the opinion that the boy will have a very good arm. If the operation is not successful, he would continue to have a definite weakness of that extremity, if he didn’t have a firm bony union. The boy has about three chances out of five of escaping an operation today.
From all the facts and circumstances in the record in the case, we are of the opinion that the truck driver was negligent in undertaking to pass the other truck at the congested point where the collision took place. It is contended by the state that the boy was negligent in turning into the street off of the sidewalk, but from all of the evidence, in the record, as well as a view of the premises by the court, we are of the opinion that when the boy entered Virginia street, that his side of the street was clear, that he had the right to assume that it would remain free and unobstructed, but that when the truck undertook to, and did pass the other truck at the intersection of Park avenue along these driveways where cars were parked on either side he, in effect, completely obstructed the boy’s side of the street and that the boy was not left in position to avoid the collision. Then, too, the driver knew the street, drove over it almost daily, and knew that the playground was in front of him.
However, none of the witnesses present or in the vicinity of the collision could give a clear version of how the collision took place, as to where the boy was when the one truck passed the other, or as to whether the boy could have seen this truck coming on his side of the street, which was passing the other truck, in time to have stopped to avoid the collision. He was not certain that he could not have seen it when riding into the street before he passed the parked truck. We therefore feel that he should be chargeable with some negligence such as to induce us to reduce the amount of the award that we might have otherwise found.
*357 From all the facts and mitigating circumstances in the record in the case we are of the opinion that awards should be made to each of the claimants. The father’s claim is based upon loss of bicycle $20.00; Dr. Anderson’s bill $125.00; Dr. Bailey $10.00; ambulance $5.00; x-rays $7.50; Staats hospital $138.50, as well as loss of the boy’s services and medical attention that may be required. We are of an opinion from the evidence that an award of $400.00 to the father, Alfred D. Roberts II, would be fair and reasonablé, and that an award to the boy, Alfred D. Roberts III, in the sum of $1000.00 would be fair and reasonable for his injuries, suffering, and handicaps for the present and future.
We therefore recommend an award to Alfred D. Roberts II, in the sum of four hundred- dollars ($400.00), and to Alfred D. Roberts III, the sum of one thousand dollars ($1000.00), and an order will be entered accordingly.